tempt as a result.

72496, 72497. IN RE A. T., J. L., R. C.
(348 SE2d 110)

DEEN, Presiding Judge.

In these two companion cases, 72496 and 72497, the adoptive parents appeal the termination of their parental rights vis-a-vis the girl and two boys whose interests are involved here. The children, biologically the offspring of the same mother and three different fathers, were adopted by the appellants a little more than a year after their December 1979 marriage. At the time of his adoption the oldest child, a boy, was about 9 years old.

There was evidence that almost from the day of adoption (in the case of the girl, even before) the children were regularly subjected by the adoptive father (hereinafter referred to as "the father") to sexual liberties and abuse of various sorts, including forced sodomy with the father and with one another.[1] The evidence further showed that the adoptive mother (hereinafter referred to as "the mother") was informed of the incidents at least as early as the Spring of 1982 and actually witnessed a number of instances. There was evidence that, beyond a single instance following which the mother asked the father to cease from such activities, she did nothing about them and even told third persons, after the practices became known outside the family, that the reports of the children (primarily the girl) were mere fabrications and that the father, who held a responsible job with a major financial institution, was an "underdog" in the matter. There was also evidence that the father routinely went about the home naked and required the children to do so whenever he was present, and that he took them to R-rated movies. According to testimony of a

---

[1] The girl and one boy were adopted at the same time in 1981; the younger boy was adopted in 1982. The adoptive mother had been married twice previously and had at least one child, a boy who briefly resided with the couple after their marriage, and, according to evidence presented, was encouraged by his stepfather to join in the sexual activities.

psychologist called in for consultation after the incidents became known, the mother had a schizoid condition and was detached from reality and unable to deal with it.

In March 1984, after these matters had come to the attention of neighbors, teachers, and school counselors, the DeKalb County Department of Family and Children's Services (DFCS) intervened and removed the children from the home and placed them in temporary foster care.[2] The adoptive father ascertained the children's whereabouts and attempted to reinstate the sexual activities. During this same time period the mother sought to make arrangements for a program of rehabilitation for the family; this apparently was never implemented. After a hearing held June 3-5, 1985, the DeKalb County Juvenile Court made findings of fact and conclusions of law, determined that clear and convincing evidence showed that the children were deprived and the parents unfit, and ordered the parental rights of both terminated and the children placed in custody of DFCS as candidates for adoption.

On appeal in case number 72497, the mother contends that the children were improperly removed from the home in contravention of OCGA § 15-11-41 (c); that she had received from the children only one report of abuse and had taken steps to correct it; and that, moreover, there is no evidence of her present unfitness as a parent. She enumerates as error the trial court's condoning DFCS' failure to undertake the rehabilitation efforts which she interprets OCGA § 15-11-41 as prescribing as prerequisite to removing the children from the home and terminating parental rights; the court's failure to follow the holdings in certain federal cases; the court's rulings regarding certain alleged violations of appellant's visitation rights; and several rulings of the court pertaining to the proper standard for termination of parental rights. In the companion case, number 72496, the father adopts the mother's enumeration of errors and brief. The state concedes that the children were initially removed from the home before institution of family rehabilitation efforts but contends that, despite the irregularities alleged by appellant, the removal of the children was necessary as an emergency measure and, moreover, that most if not all of the alleged errors should have been appealed subsequent to the entry of the June 1984 order and are therefore not properly before the court in the instant appeal.[3] *Held*:

---

[2] The DeKalb County Juvenile Court appointed a guardian *ad litem* for the children in May 1984, and by order of June 6, 1984, placed them in temporary custody of DFCS.

[3] The record indicates that the mother appealed the June 6, 1984, order on July 5, 1984, but withdrew the appeal September 19 of that year. The father was indicted for child abuse. He pled guilty and is currently serving a twenty-year prison term, to be followed by twenty years' probation.

In reviewing the record of the instant case, this court cannot avoid the inference that appellants are urging us to "strain at a gnat and swallow a camel"; that is, to reverse the case on an alleged procedural irregularity so as to reinstate appellants' parental rights and turn the hapless children over to an (at best) indifferent and ineffectual mother and perhaps ultimately, in a worst-case scenario, to a perverted and criminally abusive father. The conclusion is inescapable that the children have been systematically subjected to abuse of the grossest and most traumatic character. According to the record, the father admitted having engaged in the behavior attributed to him but asserted, as if in justification, that he considered such conduct within the family to be healthy and, moreover, that it had not occurred as frequently as alleged. Further, the record contains evidence that both the men to whom the mother had previously been married had also had sexual problems, although apparently not to the same degree as appellant here. We have previously noted, supra, that (whether because of her prior conjugal experiences or from some other cause) the mother made little, if any, affirmative effort to control the father's behavior with the children and considered him the "underdog" in the matter. Termination of parental rights in the instant case was based on no stricter standards than would be applied to anyone else in a similarly sordid situation, and both appellants fell abysmally short of surmounting those standards. See OCGA § 15-11-51 (a); see also, e.g., *In the Interest of A. O. A.*, 172 Ga. App. 364 (323 SE2d 208) (1984); *In the Interest of C. M.*, 172 Ga. App. 757 (324 SE2d 581) (1984). The federal case cited by appellants is inapposite to the instant case.

In view of the severity and prolonged consistency of the mental and physical abuse here, we cannot but wonder at the urgency with which the adoptive parents now plead for another chance to control the lives and destinies of the children. As the late Chief Justice Logan Bleckley observed in another case in which the effort was too little and too late, "They were in time to announce his death, but not to aid in preserving his life." *Central R. & Banking Co. v. Denson*, 84 Ga. 774, 786 (11 SE 1039) (1890).

Under the circumstances, to permit either of the appellant parents to resume a familial relationship with these unfortunate children would be to condone the enormities with which the latter have been afflicted. Whatever possibility may remain for A. T., J. L., and R. C. to become normal adults is contingent upon their being brought under the influence of truly mature, truly stable, truly caring persons — the antithesis of the emotionally stunted and crippled couple who assumed, and then egregiously abused, the responsibility for their nurture. In the light of all the evidence, we find in appellants' enumerations of error and arguments nothing to persuade us that there was reversible error below, or that we should do otherwise than

affirm the judgment of the trial court in both these cases.
*Judgments affirmed. Benham and Beasley, JJ., concur.*

DECIDED JULY 14, 1986 —
REHEARING DENIED JULY 25, 1986 —

*Ennis L. Willis,* for appellant (case no. 72496).
*Mary Walton Whiteman, Kathrine D. Arrington,* for appellant
(case no. 72497).
*Robert G. Nardone, Alan Blaisdell, David C. Will, Assistant Attorney General,* for appellee.